# EXHIBIT A

# AFFIDAVIT OF ROY ROWSELL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NICOLE DOMNARSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12-CV-30139 |
| UBS FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF ROY ROWSELL

I, Roy Rowsell, hereby declare under penalty of perjury as follows:

1.     I am over the age of eighteen and have personal knowledge of the facts set forth herein. If sworn as a witness I can testify competently to the facts and statements as herein set forth.

2.     I am employed with Financial Industry Regulatory Authority ("FINRA"). I am the Case Administrator responsible for handling the procedural matters in the underlying arbitration between UBS and Nicole Domnarski (*UBS Financial Services Inc. v. Nicole C. Domnarski*, FINRA Case No. 12-00096).

4.     On January 9, 2012, UBS filed a Statement of Claim with FINRA.   On January 11, 2012, pursuant to FINRA Code of Arbitration Procedure 13301, FINRA served the Statement of Claim via regular mail on Ms. Domnarski at her residential address on file with FINRA: 56 Onley Street, Palmer, MA 01069 along with a transmittal letter.  A true and correct copy of the statement of claim and transmittal letter from FINRA is attached hereto as <u>Exhibit 1</u>.  The Statement of Claim was not returned as undeliverable by the U.S. Postal Service.

5.      On March 7, 2012 FINRA sent a letter to Ms. Domnarski advising that it had not received her Statement of Answer.  A true and correct copy of the letter is attached hereto as Exhibit 2.

6.      On April 11, 2012, FINRA sent a letter to both parties advising them that an arbitrator was selected. A true and correct copy of the letter is attached hereto as Exhibit 3.

7.      Neither Ms. Domnarski nor her attorney filed a signed Submission Agreement or Statement of Answer.

8.      An Award was entered in UBS's favor on April 24, 2012 by Arbitrator Sandor Rabkin.  The Award was sent via Federal Express on April 27, 2012 to Ms. Domnarski at the following address: 56 Onley Street, Palmer, MA 01069.  A true and correct copy of the Award and transmittal letter is attached hereto as Exhibit 4.

9.      The Award was delivered on April 28, 2012 at 10:57 a.m. to the following address: 56 Onley Street, Palmer, MA 01069.  The Federal Express tracking number for the service of the Award is 793504461580.  A copy of the Federal Express Proof of Delivery is attached as Exhibit 5.

Further affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 7, 2012

_____
Roy Rowsell

2

**ROWSELL AFFIDAVIT**

**EXHIBIT 1**



Financial Industry Regulatory Authority

January 11, 2012

COPY -- SEE RECIPIENT LIST

Subject:   FINRA Dispute Resolution Arbitration Number 12-00096
           UBS Financial Services Inc. vs. Nicole C. Domnarski

Dear Ms. Domnarski:

FINRA sponsors a forum for securities dispute resolution.  Our arbitration program administers claims involving customers of brokerage firms and disputes between brokerage firms and their employees.  Arbitration is a method of having a dispute between two or more parties resolved by impartial persons.  Any type of dispute, claim, or controversy arising out of business dealings with any FINRA firm or registered person can be resolved in arbitration.

You have been named as a party in this arbitration, which the claimant(s) filed on **January 9, 2012**.  Enclosed is a copy of the Statement of Claim filed by the claimant(s).  You are required by FINRA rules to arbitrate this dispute.

This office administers arbitration cases according to the FINRA Codes of Arbitration Procedure (Codes).  The Codes are separated into three parts: the Customer Code, the Industry Code, and the Mediation Code.  The most up-to-date version of the Codes can be accessed or downloaded from our Web site at www.finra.org.  In addition, our Web site provides various resources for parties, including the *Party's Reference Guide* which includes important information about the arbitration process.  In addition, there is a short video on FINRA's Web site showing what to expect during the FINRA arbitration process (go to www.finra.org, click on the link to *Arbitration and Mediation*, and then click *Resources for Parties*).  If you do not have access to the Internet, you may call our office to request a copy of arbitration materials.

## Filing a Statement of Answer

You are required, on or before **March 1, 2012**, to directly serve each party with a signed and dated submission agreement (form enclosed) and answer to the statement of claim specifying the relevant facts and available defenses to the statement of claim.  At the same time that the answer to the statement of claim is served on the other parties, you must file with FINRA an original and three copies of the following: the submission agreement, the answer to the statement of claim, and any additional documents submitted with your answer.  Please send these documents and all other subsequent correspondence to the attention of the undersigned.  In your submission, you should also establish proof of service on the other parties to this matter, which is a signed statement indicating the date, time, and manner of service.

Investor protection. Market integrity.          Dispute Resolution          One Liberty Plaza      t 212 858 4200
                                                 Northeast Regional Office    165 Broadway         f 301 532 4873
                                                                              27th Floor           www.finra.org
                                                                              New York, NY
                                                                              10006-1404

Rule 12308 of the *Customer Code* and Rule 13308 of the *Industry Code* provide that, if you do not answer within the time period specified above, the panel may, upon motion, bar you from presenting any defenses or facts at the hearing, unless the time to answer was extended in accordance with the Codes. In addition, if you answer a claim that alleges specific facts and contentions with a general denial, or fail to include defenses or relevant facts in your answer that were known to you at the time the answer was filed, the panel may bar you from presenting the omitted defenses or facts at the hearing.

With the claimant's written consent, you may obtain extensions of time to answer. In accordance with Rule 12207 of the *Customer Code* and Rule 13207 of the *Industry Code*, FINRA staff will not grant you an extension of time to answer, except upon a showing of good cause. If the claimant agrees to extend your time to file your answer, please notify FINRA in writing of the new deadline for filing your answer. You should also send a copy of that notice to the claimant and all other parties.

If you receive an amended statement of claim you should review Rule 12310 of the *Customer Code* or Rule 13310 of the *Industry Code* to determine your time to file a response to the amendment.

## CRD Reporting Obligations for Registered Representatives

Article V, Section 2(c) of the FINRA By-Laws provides that registered representatives must keep their CRD registration current. Therefore, you are advised to review the Form U4 to determine if disclosure of this matter is required. If so, your failure to update your registration application may result in the filing of a formal complaint based on any omission. Any questions regarding this disclosure requirement should be directed to the FINRA Member Services Phone Center at (301) 590-6500.

## Filing Other Claims

The answer to the statement of claim may include any counterclaims against the claimant, cross claims against other respondents, or third party claims, specifying all relevant facts and remedies requested, as well as any additional documents supporting such claim. When serving a third party claim, you must provide each new respondent with copies of all documents previously served by any party, or sent to the parties by FINRA. If the answer to the statement of claim contains any counterclaims, cross claims or third party claims, you must pay all required filing fees at the time of filing. Parties may pay filing fees for counterclaims, cross claims or third party claims by check or money order payable to "FINRA Dispute Resolution" and should mail payments to the FINRA Dispute Resolution Regional Office administering the case. Please write the name of the counterclaimant, cross claimant or third party claimant and case number on the check or money order.

## Hearing Location

For customer disputes, Rule 12213 of the *Customer Code* provides that FINRA will generally select the hearing location closest to the customer's residence at the time the dispute arose, unless the customer requests in his/her initial filing a hearing location in the customer's state of residence at the time the dispute arose.

For industry disputes, Rule 13213 of the *Industry Code* provides that FINRA will generally select the hearing location that is closest to the location where the associated person was employed at

the time the dispute arose.  In industry disputes involving FINRA firms only, unless the firms are located in the same city, FINRA will consider a number of factors when deciding the hearing location.  These include the following:

- signed agreements to arbitrate;
- who initiated the transactions or business at issue; and
- location of essential witnesses and documents.

If all parties in any arbitration agree to a hearing location, FINRA ordinarily will select that hearing location.

FINRA has selected **Providence, RI** as the hearing location for this case.  FINRA will consider changing the hearing location upon motion of a party.  After the panel is appointed, however, the panel will decide any motion relating to changing the hearing location.

### Number of Arbitrators

Rule 12401 of the *Customer Code* and Rule 13401 of the *Industry Code* provide that one arbitrator will decide this case if the amount of the claim is $100,000 or less, exclusive of interest and expenses, unless all parties agree in writing to three arbitrators.  If this claim is more than $100,000 or for an unspecified or non-monetary amount, a panel of three arbitrators will be selected to decide the case, unless all parties agree in writing to the appointment of a single arbitrator to decide the case.

There are several benefits to the appointment of a single arbitrator, including: 1) reduced hearing session fees because hearings sessions with one arbitrator cost substantially less than hearing sessions with three arbitrators ($450 per hearing session versus $1,200 per hearing session in cases with over $500,000 in damages),  2) reduced fees for other events such as initial pre-hearing conferences, other pre-hearings, and  postponements, 3) reduced case processing times because single arbitrators do not need to coordinate their calendars with co-panelists to schedule a hearing, 4) reduced party effort in the arbitrator selection process because parties will receive one list of 10 names from which to choose their arbitrator, rather than three lists of 10 names each (i.e., parties will only need to research the disclosures and histories of 10 proposed arbitrators instead of 30),  5) reduced costs for photocopying pleadings and exhibits (by two-thirds), and 6) less likelihood of last minute changes in hearing dates because of arbitrator scheduling issues.

### Representation of Parties

Rule 12208 of the *Customer Code* and Rule 13208 of the *Industry Code* provide that parties may represent themselves or may be represented by an attorney admitted to practice and in good standing in any jurisdiction.  A party may be represented by a non-attorney, unless state law prohibits such representation, the person is currently suspended or barred from the securities industry in any capacity, or the person is currently suspended from the practice of law or disbarred.

### Discovery

Rule 12505 of the *Customer Code* and Rule 13505 of the *Industry Code* provide that parties must cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration.  Parties in customer cases should carefully review the *FINRA Discovery*

*Guide* and *Document Production Lists*, which can be downloaded from our Web site at www.finra.org. Upon request, FINRA will provide the parties with a copy of the *Discovery Guide* and *Document Production Lists*. Document Production Lists 1 and 2 describe the documents that are presumed to be discoverable in all arbitrations between a customer and a firm or registered person. Parties should not file with FINRA copies of correspondence relating to the exchange of documents and information, except as provided below.

## Motions

As explained in Rule 12503 of the *Customer Code* and Rule 13503 of the *Industry Code*, written motions are not required to be in any particular form, and may take the form of a letter, legal motion, or any other form that the panel decides is acceptable. Written motions must be served directly on all other parties, at the same time and in the same manner. Written motions must also be filed with the FINRA staff member assigned to your case, with additional copies for each arbitrator, at the same time and in the same manner in which they are served on the parties. Motions to Compel Discovery must also include the disputed document request or list, a copy of any objection thereto, and a description of the efforts of the moving party to resolve the issue before making the motion.

## Motions to Dismiss

Rule 12504 of the *Customer Code* and Rule 13504 of the *Industry Code* limit significantly the filing of motions to dismiss in the arbitration forum and impose strict sanctions against parties who engage in abusive motion practices. These rules specify the following three limited grounds on which a motion to dismiss may be granted before a claimant finishes presenting his/her case: 1) the non-moving party signed a settlement and release; 2) the moving party was not associated with the account, security, or conduct at issue; or 3) the claim does not meet the criteria of the eligibility rule (contained in *Customer Code* Rule 12206 and *Industry Code* Rule 13206).

## Fees

Any time a fee is assessed to you during the case, you will receive an invoice that reflects the fee assessed. At the conclusion of the case, you will receive a Statement of Account that reflects the fees assessed and any outstanding balance or refund due. Fees are due and payable to FINRA Dispute Resolution upon receipt of an invoice and should be sent to the address specified on the invoice. All questions regarding the assessment of fees should be directed to the regional office administering your case. All questions regarding the payment of fees and refunds should be directed to FINRA Finance at (240) 386-5910.

In the event multiple parties file a claim, and a single party pays the filing fees on behalf of the other filing parties, FINRA will credit the paying party the amount of the payment. In the event the parties' representative or non-party pays the filing fee on behalf of all the filing parties, FINRA will credit the first named party in the claim the amount of the payment.

At the conclusion of the case, FINRA will use the filing fee funds to pay fees owed by any of the parties that jointly filed the claim. FINRA will evenly distribute the funds to pay each party's fees. If any funds remain for any of the parties, FINRA will use those funds to pay the balance of fees owed by any other parties that filed the claim.

## Expungement Requests

FINRA rules provide for strict standards and procedures for expungement of customer dispute information from the CRD system. This rule protects the ability of investors to obtain accurate and meaningful data about firms and brokers by permitting expungement only under appropriate circumstances. Under Rule 2080, an arbitrator may grant expungement only when the claim, allegation, or information in the customer dispute is factually impossible or clearly erroneous; the broker was not involved in the alleged misconduct; or the claim, allegation, or information is false. In addition, Rule 12805 of the *Customer Code* and Rule 13805 of the *Industry Code* require arbitrators considering an expungement request to hold a recorded hearing session by telephone or in person, provide a brief written explanation of the reasons for ordering expungement, and, in cases involving settlement, review the settlement documents to examine the amount paid to any party and any other terms and conditions of the settlement.

### Explained Decisions

The arbitrators will provide an explained decision at the parties' joint request. An explained decision is a fact-based award stating the general reasons for the arbitrators' decision. FINRA rules require parties to submit any joint request for an explained decision at least 20 days before the first scheduled hearing date.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Nicole C. Haynes
Case Assistant Manager
Phone:   212-858-4200
Fax:      301-527-4873
NEProcessingCenter@finra.org

NCH:adg:LC39E
idr: 11/09/2011

Enclosures

CC:
David J. Sullivan, Esq., UBS Financial Services Inc.
Schuyler, Roche & Crisham, P.C., One Prudential Plaza, 130 East Randolph Street,
Suite 3800, Chicago, IL 60601

RECIPIENTS:
Nicole Catherine Domnarski
56 Olney Street, Palmer, MA 01069

**IN ARBITRATION**
**Before**
**FINRA DISPUTE RESOLUTION**

| | |
|---|---|
| UBS FINANCIAL SERVICES INC.,     ) | |
|     ) | |
|     Claimant,     ) | |
|     ) | |
| vs.     ) | Case No.: |
|     ) | |
| NICOLE C. DOMNARSKI,     ) | |
|     ) | |
|     Respondent.     ) | |

## STATEMENT OF CLAIM

UBS Financial Services Inc. ("UBS" or "Claimant") respectfully submits this Statement of Claim pursuant to Section 13860 of the FINRA Code of Arbitration Procedure for Industry Disputes, seeking monetary relief from Respondent Nicole C. Domnarski ("Domnarski") as follows:

## NATURE OF THE CLAIM

1.      This is an action by UBS to collect damages caused by Domnarski's default under two promissory notes entered into between the parties with respect to her repayment of the balance due under the promissory notes.

## PARTIES

2.      Claimant UBS is, and at all relevant times has been, a member organization of FINRA and is a Delaware corporation licensed and qualified to do business as a broker-dealer in the state of Massachusetts.

3.      Respondent Domnarski was at all relevant times a person associated with a member of FINRA and a resident of Massachusetts.  Domnarski was employed by UBS from November 19, 2008 until her employment terminated on August 25, 2011.

## JURISDICTION

4.      The claim by UBS against Domnarski as alleged herein is a claim that is required to be arbitrated under the rules, constitutions or by-laws of FINRA.

5.      Domnarski executed a Form U-4 in connection with her employment with UBS and thereby consents to the jurisdiction of FINRA to arbitrate the instant claim against her.

## FACTS

6.      Domnarski joined UBS as a financial advisor in its Springfield, Massachusetts branch office on November 19, 2008.

7.      In connection with her employment with UBS, Domnarski received from UBS two Employee Transition Program loans.  Domnarski executed two Promissory Notes in connection with these loans.

### The First Employee Transition Program Loan—Promissory Note #2027

8.      On December 16, 2008, in connection with hiring Domnarski, UBS advanced to Domnarski as a loan the principal sum of $132,570.00.  This loan, memorialized in a promissory note entitled "Promissory Note #2027" ("Note 2027", attached as Exhibit A), was due to be repaid to UBS in nine equal annual installments, with interest at an annual rate of 4.0%, on November 19, in each year, in years 2009 through 2017.  Domnarski further agreed, as expressly set forth in Note 2027, that "[t]his Note also shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which the Employee hereby expressly waives, in the event that the Employee's employment with [UBS] is

-2-

terminated, either voluntarily or involuntarily by the Employee or [UBS], for any reason whatsoever." See Exhibit A, at p. 2.

9.      Note 2027 also provides for interest to be paid on the Note "from the date of this Note at a per annum interest rate of four percent (4.0%) ("Interest Rate"). All interest will be computed on the basis of the number of days elapsed and a 360-day year." Exhibit A, at p. 1.

10.      Note 2027 provides that "[i]n the event that any arbitration, suit or other proceeding is brought against the Employee to collect this Promissory Note, [UBS] shall be entitled to recover from the Employee all costs and reasonable expenses of collection and enforcement, including, without limitation, attorneys' fees and disbursements." Exhibit A, at p. 2.

11.      In addition to Note 2027, Domnarski also entered into Transition Agreement #2027 (attached hereto as Exhibit B) with UBS, whereby UBS agreed to pay Domnarski a total of nine transition payments, payment to be made on November 19 of each year, in years 2009 through 2017, provided, among other conditions, Domnarski remained in "the full-time, active employment of [UBS] . . . ." Exhibit B, at p.1 par. 2.

12.      Domnarski was in "the full-time, active employment" of UBS on November 19, 2009 and November 19, 2010, and hence received from UBS the first two transition payments provided for in Transition Agreement 2027 of $20,032.80 and $19,443.60, respectively. These payments were duly applied to satisfy the first two installment payments, plus interest, due on November 19, 2009 and November 19, 2010 under Promissory Note 2027.

13.      Domnarski's employment with UBS terminated on August 25, 2011, at which time she no longer remained in "the full-time, active employment" of UBS for purposes of Transition Agreement 2027.

14.    To date, Domnarski has made two payments on Promissory Note 2027, leaving the principal balance of $103,110.00, less the amount of $4,350.45 (representing prepayment funds withheld from Domnarski's compensation and not previously applied to the principal balance). The total principal amount left due and owing to UBS under Note 2027 is $98,759.55.

### The Second Employee Transition Program Loan—Promissory Note #B00000030U

15.    On or about November 22, 2010 UBS advanced to Domnarski as a loan the principal sum of $28,408.00. This loan, memorialized in a promissory note entitled Promissory Note #B00000030U ("Note B00000030U", attached as Exhibit C), was due to be repaid to UBS in nine equal annual installments, with interest at a rate of 3.004%, on November 22 of each year, in years 2011 through 2019.

16.    Note B00000030U also provides for interest to be paid on the Note "from the date of this Note at a per annum interest rate of 3.004% ("Interest Rate"). All interest will be computed on the basis of the number of days elapsed and a 360-day year." Exhibit C, at p. 1

17.    Like Note 2027, Note B00000030U provides that: (a) Domnarski would be liable for attorneys' fees and costs incurred by UBS in enforcing the Note; and (b) Domnarski waived presentment, demand, protest, notice of default or other notice of any kind.

18.    In addition to Note B00000030U, Domnarski also entered into Transition Agreement #B00000030U (attached hereto as Exhibit D) with UBS, whereby UBS agreed to repay Domnarski a total of nine transition payments, payment to be made on November 22 of each year, in years 2011 through 2019, provided, among other conditions, Domnarski remained in "the full-time, active employment of [UBS] . . . ." Exhibit D, at par. 2.

19.    Domnarski's employment with UBS terminated August 25, 2011 and, thus, she was not in "the full-time, active employment" of UBS for purposes of the Transition Agreement.

20.    To date, Domnarski has not made any payments on Promissory Note B00000030U, leaving the principal balance of $28,408.00, less the amount of $724.97 (representing prepayment funds withheld from Domnarski's compensation and not previously applied to the principal balance).  The total principal amount left due and owing under Note B00000030U is $27,683.03.

### Domnarski's Refusal to Honor Her Obligations Under the Promissory Notes

21.    At the time of Domnarski's termination of employment with UBS, the remaining outstanding balance due on Promissory Notes 2027 and B00000030U, collectively, was $126,442.58 (the "Outstanding Balance").

22.    On August 30, 2011, UBS sent Domnarski a letter demanding, among other things, repayment of any and all amounts due and owing pursuant to the terms of Promissory Notes 2027 and B00000030U.  A copy of the letter is attached to this Statement of Claim as Exhibit E.

23.    Domnarski has not paid UBS the Outstanding Balance or any portion thereof.

### FIRST CAUSE OF ACTION
#### (Breach of Contract)

24.    UBS realleges and incorporates by reference paragraphs 1 through 23 of the Statement of Claim as if fully alleged herein.

25.    The Notes are valid agreements entered into between UBS and Domnarski.

26.    Under the terms of the Notes, Domnarski was obligated to immediately repay the Outstanding Balance upon the termination of her employment.

27.    Domnarski breached the terms of the Notes when she failed to repay the Outstanding Balance on or after the termination of her employment.

28.     Domnarski's breach of contract has caused, and will continue to cause, UBS to suffer monetary damages in the amount of $126,442.58 plus interest and costs, and expenses, including reasonable attorneys' fees, pursuant to the terms of the Notes.

### SECOND CAUSE OF ACTION
**(Unjust Enrichment)**

29.     UBS realleges and incorporates by reference paragraphs 1 through 28 of the Statement of Claim as if fully alleged herein.

30.     In December 2008 and November 2010, UBS provided Domanrski with Employee Transition Program loans in the amount of $132,570.00 and $28,408.00, respectively, in exchange for her commitment to provide professional services to UBS in connection with her UBS employment.

31.     Domnarski executed the loan documents and accepted the full amounts of the loans on December 16, 2008 and November 22, 2010.

32.     UBS failed to receive the professional services Domnarski agreed to provide in exchange for the loans and, as a result, by failing to remit to UBS the Outstanding Balance, Domnarski has been unjustly enriched at UBS's expense in the total amount of $126,442.58.

### [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

WHEREFORE, Claimant UBS respectfully demands that this Panel:

    A. Award UBS damages in an amount of $126,442.58, plus accrued interest as provided in the Notes;

    B. Award UBS the costs of arbitration, including filing fees, forum fees, attorneys' fees and interest; and

    C. Award UBS such other and further relief as may be just and proper.

Dated: January 9, 2012

UBS FINANCIAL SERVICES INC.

By: _____

One of its Attorneys

James L. Komie
David J. Sullivan
Schuyler, Roche & Crisham, P.C.
One Prudential Plaza, Suite 3800
130 East Randolph Street
Chicago, Illinois 60601
Tel:   (312) 565-2400
Fax:  (312) 565-8300
773262v1

# EXHIBIT A

**PROMISSORY NOTE #2027**

$132,570.00                                                    December 16, 2008

FOR VALUE RECEIVED, Nicole Domnarski, (the "Employee") promises to pay, as herein provided, to the order of UBS Financial Services Inc., a Delaware corporation and its successors and/or assigns ("UBSFS"), in lawful money of the United States of America, at 1000 Harbor Boulevard, Weehawken, NJ 07086, or at such other place as UBSFS may direct, the principal sum of $132,570.00 (the "Principal Amount"), together with interest thereon from the date of this Note at a per annum interest rate of four percent (4.0%) ("Interest Rate"). All interest will be computed on the basis of the number of days elapsed and a 360-day year.

The Principal Amount, together with all accrued but unpaid interest thereon and any and all other fees or other charges payable in connection with this Promissory Note (collectively the "Obligations"), shall be due and payable in the amounts and on the dates set forth immediately below:

$14,730.00, plus accrued interest, on November 19, 2009

$14,730.00, plus accrued interest, on November 19, 2010

$14,730.00, plus accrued interest, on November 19, 2011

$14,730.00, plus accrued interest, on November 19, 2012

$14,730.00, plus accrued interest, on November 19, 2013

$14,730.00, plus accrued interest, on November 19, 2014

$14,730.00, plus accrued interest, on November 19, 2015

$14,730.00, plus accrued interest, on November 19, 2016

$14,730.00, plus accrued interest, on November 19, 2017

To the fullest extent permitted by law, Employee authorizes UBSFS to offset the above payments at the time they are due from any salary, commission, bonus or other compensation payable to the Employee by UBSFS. Notwithstanding the foregoing, to the fullest extent permitted by law, Employee additionally authorizes UBSFS to offset the above payments on a monthly basis in advance of when they are due from any salary, commission, bonus or other compensation payable. All amounts prepaid to UBSFS shall be applied as payments on the Principal Amount due.

At any time after the execution of this Note, Employee may revoke this authorization to make offsets and may elect instead to pay the Obligations by check by giving written notice to UBSFS at 1000 Harbor Boulevard, Attn:   Payroll Services, Weehawken, NJ 07086 or such other address as directed by UBSFS.  Payments by check must be received by UBSFS on or before the due date for the Obligations set forth above. If Employee has elected to pay by check and UBSFS does not receive the required check by the due date, this Note shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which Employee hereby expressly waives.

This Note also shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which the Employee hereby expressly waives, in the event that the Employee's employment with UBSFS is terminated, either voluntarily or involuntarily by the Employee or UBSFS, for any reason whatsoever.

Notwithstanding the above, UBSFS may demand full or partial payment of the Obligations, at its sole and absolute discretion, at any time.

Principal and interest under this Promissory Note may be prepaid in whole or in part at any time by the Employee.  Any payments or prepayments (whether voluntary or mandatory) shall be applied at the option of UBSFS, first to collection costs, if any, then to accrued interest and then to principal.

Notwithstanding anything to the contrary contained in this Promissory Note, the interest rate charged hereunder shall not exceed the maximum rate allowable by applicable law.  If the stated interest rate hereunder exceeds the maximum allowable rate, then the interest rate shall be reduced to the maximum allowable rate, and any excess payment of interest made by the Employee at any time shall be applied to any unpaid or future payments due to UBSFS hereunder (or returned to the Employee if no such payments are or will become due).

The Employee hereby waives diligence, presentment, demand, notice of maturity, protest, notice of protest, notice of non-payment and any other notice of any kind in connection with this Promissory Note.  The Employee hereby further agrees to waive all rights arising out of any statute now existing or hereafter enacted with respect to suretyship.

In the event that any arbitration, suit or other proceeding is brought against the Employee to collect this Promissory Note, UBSFS shall be entitled to recover from the Employee all costs and reasonable expenses of collection and enforcement, including, without limitation, attorneys' fees and disbursements.  In addition, in the event of a payment default hereunder, the Employee shall pay all reasonable attorneys' fees and disbursements incurred by UBSFS in obtaining advice as to its rights and remedies in connection with such default.

UBSFS will at all times have a right to set off any or all of the Obligations, at or after the time at which they become due, whether upon demand, by acceleration or otherwise, against all securities, cash, deposits or other property in the possession of or at any time in

2

any account maintained with UBSFS or any of its affiliates by or for the benefit of the Employee, whether carried individually or jointly with others. This right is in addition to, and not in limitation of, any right UBSFS may have at law or otherwise.

All rights and remedies of UBSFS under this Promissory Note are cumulative and are in addition to all other rights and remedies that UBSFS may have at law or equity or under any other contract or other writing for the collection of any amount due under this Promissory Note.

This Note may be assigned by UBSFS and the benefits and obligations thereof shall inure to UBSFS's successors and assigns.

This Promissory Note may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBSFS. The non-exercise by UBSFS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

With the exception of claims for injunctive relief or for the denial of benefits under the Firm's disability or medical plans, Employee and UBSFS agree that, unless prohibited by applicable law, any disputes between Employee and UBSFS including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment, or any claims for discrimination, retaliation or harassment, or any other claims whether they arise by statute or otherwise, including but not limited to, claims arising under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, The Age Discrimination in Employment Act of 1967, The Worker Adjustment and Retraining Notification Act, The Employee Retirement Income Security Act, The Americans With Disabilities Act, The Equal Pay Act of 1963, The Americans With Disabilities Act of 1990, The Family and Medical Leave Act of 1993, The Sarbanes- Oxley Act, or any other federal, state or local employment or discrimination laws, rules or regulations, including wage and hour laws, will be determined by arbitration as authorized and governed by the arbitration law of the state of New Jersey. Any such arbitration will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA"), except that Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS pursuant to its Employment Arbitration Rules and Procedures and subject to the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBSFS agree that the decision of the Arbitrator(s) will be final and binding on the parties and that the Arbitrator(s) is authorized to award whatever remedies would be available to the parties in a court of law.  Employee and UBSFS further agree that any disputes between Employee and UBSFS shall be heard, as set forth above, by FINRA or JAMS without consolidation of such claims with any other person or entity. Employee waives any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to Employee's employment with UBSFS or termination of

3

. employment with UBSFS.

Information about JAMS, including its Employment Arbitration Rules and Procedures can found at www.jamsadr.com. If Employee chooses to arbitrate before JAMS, then, where permitted by law, Employee only shall be responsible for those arbitration fees and costs that Employee would have been required to bear in a FINRA arbitration.

THIS PROMISSORY NOTE SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

IN WITNESS WHEREOF, Employee has executed this Note as of the date set forth above.

EMPLOYEE:

UBSFS:

4

## EMPLOYEE ACKNOWLEDGMENT

If Employee works in either Indiana or Ohio, Employee hereby acknowledges receiving a signed copy of this Promissory Note within ten (10) days of execution.

Dated: 12/17/08

EMPLOYEE:

5

**EXHIBIT B**

### TRANSITION AGREEMENT #2027

This Transition Agreement ("Agreement") is entered into this 19 day of November 2008, between UBS Financial Services Inc., a Delaware corporation, and its successors and/or assigns ("UBSFS") and Nicole Domnarski ("Employee").

1.   Transition Payments: Subject to the terms and conditions set forth in this Agreement, on the dates set forth below, UBSFS agrees to pay Employee transition payments in the amounts set forth immediately below less appropriate withholdings for Federal, State and local income and employment taxes:

$ 20,032.80 on November 19, 2009

$ 19,443.60 on November 19, 2010

$ 18,854.40 on November 19, 2011

$ 18,265.20 on November 19, 2012

$ 17,676.00 on November 19, 2013

$ 17,086.80 on November 19, 2014

$ 16,497.60 on November 19, 2015

$ 15,908.40 on November 19, 2016

$ 15,319.20 on November 19, 2017

2.   Conditions For Transition Payments: UBSFS shall have no obligation to make any transition payment hereunder in the event that Employee's employment with UBSFS is terminated, either voluntarily or involuntarily, by Employee or UBSFS for any reason whatsoever other than disability (as defined herein) or death. Further, UBSFS shall not be obligated to make any transition payment hereunder unless: (a) Employee has, at all times since the date of this Agreement, remained in the full-time, active employment of UBSFS; (b) Employee has obtained and maintained in full force and effect all licenses and registrations from the Financial Industry Regulatory Authority ("FINRA"), securities exchanges, state securities commissions and other regulatory bodies as UBSFS shall determine is necessary or appropriate in order for Employee to conduct securities or commodities transactions or otherwise perform the functions for which he/she is employed; and (c) Employee is current on all of his or her outstanding obligations to UBSFS. For purposes of any applicable wage and hour laws, rules or regulations, Employee hereby acknowledges that the transition payments are not earned by the Employee until any amounts owed to UBSFS by the Employee are paid. Employee further acknowledges that he or she will not be entitled to any part-year or pro-rata transition payment if his or her employment terminates prior to the date the next transition payment is due to be made by UBSFS.

3.    Death Or Disability:    If Employee shall die or incur a disability while a full-time employee or UBSFS, then UBSFS shall make a lump sum payment of the transition payments remaining on the date of the Employee's death or the date Employee incurred such a disability. Such lump sum payment shall be subject to applicable withholdings and shall be remitted to Employee (or his/her estate) or, at UBSFS's option, applied to any financial obligation Employee (or his/her estate) has to UBSFS as soon as administratively feasible, but in no event later than March 15 of the calendar year following the year in which such event occurs. For purposes of this Agreement, "disability" shall mean a "total disability" as such term is used in the UBSFS Long Term Disability ("LTD") Plan), provided, however, that if a total disability as defined in the LTD Plan does not constitute a "disability" within the meaning of Section 409A of the Internal Revenue Code of 1986, as amended, or the regulations promulgated thereunder ("Section 409A"), then disability for purposes of this Agreement shall have the meaning set forth in Section 409A.

4.    Arbitration:    With the exception of claims for injunctive relief or for the denial of benefits under the Firm's disability or medical plans, Employee and UBSFS agree that, unless prohibited by applicable law, any disputes between Employee and UBSFS including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment, or any claims for discrimination, retaliation or harassment, or any other claims whether they arise by statute or otherwise, including but not limited to, claims arising under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, The Age Discrimination in Employment Act of 1967, The Worker Adjustment and Retraining Notification Act, The Employee Retirement Income Security Act, The Americans With Disabilities Act, The Equal Pay Act of 1963, The Americans With Disabilities Act of 1990, The Family and Medical Leave Act of 1993, The Sarbanes-Oxley Act, or any other federal, state or local employment or discrimination laws, rules or regulations, including wage and hour laws, will be determined by arbitration as authorized and governed by the arbitration law of the state of New Jersey. Any such arbitration will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA"), except that Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS pursuant to its Employment Arbitration Rules and Procedures and subject to the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness.    Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBSFS agree that the decision of the Arbitrator(s) will be final and binding on the parties and that the Arbitrator(s) is authorized to award whatever remedies would be available to the parties in a court of law.  Employee and UBSFS further agree that any disputes between Employee and UBSFS shall be heard, as set forth above, by FINRA or JAMS without consolidation of such claims with any other person or entity. Employee waives any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to Employee's employment with UBSFS or termination of employment with UBSFS.

Information about JAMS, including its Employment Arbitration Rules and Procedures can found at www.jamsadr.com.  If Employee chooses to arbitrate before JAMS, then,

where permitted by law, Employee only shall be responsible for those arbitration fees and costs that Employee would have been required to bear in a FINRA arbitration.

5.    Non-Solicitation of Clients: In the event Employee's employment with UBSFS is terminated for any reason whatsoever, whether voluntarily or involuntarily, Employee agrees, for a period of one year from the date of termination or until such time that all amounts owed to UBSFS by the Employee have been fully repaid to UBS, whichever is earlier, to not solicit, directly or indirectly, any of the clients who maintain accounts at UBSFS ("Clients of UBSFS") whom Employee serviced during his/her employment at UBSFS or other Clients of UBSFS whose names became known to Employee while in the employ of UBSFS.

"Solicit" as set forth in this paragraph means that the Employee will not initiate, whether directly or indirectly, any contact or communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting a client or that may have the effect of inviting, encouraging or requesting a client:

(a)   to transfer his/her UBSFS account(s) to the Employee or his/her new employer; or
(b)   to open a new account with Employee or his/her new employer; or
(c)   to otherwise discontinue his/her existing business relationship with UBSFS.

6.    Confidentiality of Client Information: All information concerning Clients of UBSFS, former clients of UBSFS and prospective clients of UBSFS must be treated as confidential and must not be disclosed to anyone outside UBSFS unless the disclosure is expressly authorized by the client, required by law, rule, regulation or legal process, Employee further expressly agrees that, in the event Employee's employment is terminated for any reason whatsoever, whether voluntarily or involuntarily, Employee may not take any records or information referring or relating to Clients of UBSFS, former clients of UBSFS and prospective clients of UBSFS, whether originals or copies, in hard copy or computerized form.

7.    Other Agreements: In the event that Employee enters into other agreements with UBSFS that contain non-solicitation and/or confidentiality obligations, including, but not limited to, Corporate Employee Account Servicing Agreements, Receiving and/or Retiring or Transitioning Financial Advisor Agreements, Financial Advisor Team Agreements, and/or Account Assignment Agreements, the non-solicitation and/or confidentiality provisions of any such agreement shall govern Employee's conduct with respect to the solicitation of clients and use of client information covered by those Agreements.

8.    Remedies: In the event that any of the provisions contained in the Non-Solicitation of Clients and/or Confidentiality of Client Information paragraphs of this Agreement are breached by Employee, Employee understands that Employee will be liable to UBSFS for any damage and/or injury, including but not limited to reasonable attorney's fees, incurred to enforce the provisions of this Agreement. Employee also specifically agrees that, in the event of breach of the Non-Solicitation of Clients and/or Confidentiality

3

of Client Information paragraphs of this Agreement, damages alone will be an inadequate remedy and UBSFS will in addition to damages for past breach be entitled to injunctive or other equitable relief against Employee to enforce the provisions of these paragraphs.

EMPLOYEE FURTHER EXPRESSLY CONSENTS TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION BY ANY COURT OR ARBITRATION PANEL WITH JURISDICTION OVER EMPLOYEE TO PROHIBIT THE BREACH OF ANY PROVISION OF THIS AGREEMENT, OR TO MAINTAIN THE STATUS QUO PENDING THE OUTCOME OF ANY ARBITRATION PROCEEDING THAT MAY BE INITIATED; AND, FURTHER, THAT THE ISSUE OF TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF MAY BE DECIDED BY A COURT AND NOT BY AN ARBITRATION PANEL SHOULD UBSFS IN ITS DISCRETION ELECT TO SEEK SUCH RELIEF.

9.    Assignment:  This Agreement may be assigned by UBSFS and the benefits and obligations thereof shall inure to UBSFS's successors and assigns (and all references herein to UBSFS shall together be deemed to refer to such successors or assigns as the case may be).

10.    Terms And Modifications:  This Agreement contains all of the terms of the agreement between the parties hereto relating to the subject matter hereof and may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBSFS.  The non-exercise by UBSFS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

11.    Not An Employment Contract:  Employee expressly acknowledges that his employment with UBS Financial Services is "at will" and that this Agreement is not an employment contract or agreement to employ Employee for a specified period of time or a promise of continued employment with UBSFS for any period whatsoever.  Accordingly, Employee acknowledges that his employment could be terminated with or without cause and with or without notice at any time at his option or that of UBS Financial Services.

12.    Governing Law:  This Agreement shall be governed by and construed and enforced in accordance with the laws of the state of New Jersey without regard to principles of conflicts of laws.

IN WITNESS WHEREOF, Employee has executed this Agreement as of the date set forth above

EMPLOYEE:

_nicole Dmnarthi_

UBS Financial Services Inc.

4

By: _____

5

# EXHIBIT C

## PROMISSORY NOTE #B00000030U

$28,408.00                                                                    11/22/2010

       FOR VALUE RECEIVED, NICOLE CATHERINE DOMNARSKI, (the "Employee") promises to pay, as herein provided, to the order of UBS Financial Services Inc. or UBS Credit Corp., a Delaware corporation and its successors and/or assigns ("UBS"), in lawful money of the United States of America, at 1000 Harbor Boulevard, Weehawken, NJ 07086, or at such other place as UBS may direct, the principal sum of $28,408.00 (the "Principal Amount"), together with interest thereon from the date of this Note at a per annum interest rate of 3.004% ("Interest Rate"). All interest will be computed on the basis of the number of days elapsed and a 360-day year.

       The Principal Amount, together with all accrued but unpaid interest thereon and any and all other fees or other charges payable in connection with this Promissory Note (collectively the "Obligations"), shall be due and payable in the amounts and on the dates set forth immediately below:

            $3,156.44, plus accrued interest, on 11/22/2011

            $3,156.44, plus accrued interest, on 11/22/2012

            $3,156.44, plus accrued interest, on 11/22/2013

            $3,156.44, plus accrued interest, on 11/22/2014

            $3,156.44, plus accrued interest, on 11/22/2015

            $3,156.44, plus accrued interest, on 11/22/2016

            $3,156.44, plus accrued interest, on 11/22/2017

            $3,156.44, plus accrued interest, on 11/22/2018

            $3,156.44, plus accrued interest, on 11/22/2019

To the fullest extent permitted by law, Employee authorizes UBS to offset the above payments at the time they are due from any salary, commission, bonus, award, or other compensation payable to the Employee by UBS and all related entities, other than deferred compensation as defined in Section 409A of the Internal Revenue Code and any related regulations and guidance, as the same may be amended from time to time ("I.R.C. Section 409A"). Notwithstanding the foregoing, to the fullest extent permitted by law, Employee additionally authorizes UBS to offset the above payments on a monthly basis in advance of when they are due from any salary, commission, bonus, award, or other compensation

payable, other than deferred compensation as defined in I.R.C. Section 409A. All amounts prepaid to UBS shall be applied as payments due on the Principal Amount.

At any time after the execution of this Note, Employee may revoke this authorization to make offsets and may elect instead to pay the Obligations by check by giving written notice to UBS at 1000 Harbor Boulevard, Attn:     Payroll Services, Weehawken, NJ 07086 or such other address as directed by UBS. Payments by check must be received by UBS on or before the due date for the Obligations set forth above.  If Employee has elected to pay by check and UBS does not receive the required check by the due date, this Note shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which Employee hereby expressly waives.

This Note also shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which the Employee hereby expressly waives, in the event that the Employee's employment with UBS is terminated, either voluntarily or involuntarily by the Employee or UBS, for any reason whatsoever.

Notwithstanding the above, UBS may demand full or partial payment of the Obligations, at its sole and absolute discretion, at any time.

Principal and interest under this Promissory Note may be prepaid in whole or in part at any time by the Employee.  Any payments or prepayments (whether voluntary or mandatory) shall be applied at the option of UBS, first to collection costs, if any, then to accrued interest and then to principal.

Notwithstanding anything to the contrary contained in this Promissory Note, the interest rate charged hereunder shall not exceed the maximum rate allowable by applicable law.  If the stated interest rate hereunder exceeds the maximum allowable rate, then the interest rate shall be reduced to the maximum allowable rate, and any excess payment of interest made by the Employee at any time shall be applied to any unpaid or future payments due to UBS hereunder (or returned to the Employee if no such payments are or will become due).

The Employee hereby waives diligence, presentment, demand, notice of maturity, protest, notice of protest, notice of non-payment and any other notice of any kind in connection with this Promissory Note.  The Employee hereby further agrees to waive all rights arising out of any statute now existing or hereafter enacted with respect to suretyship.

In the event that any arbitration, suit or other proceeding is brought against the Employee to collect this Promissory Note, UBS shall be entitled to recover from the Employee all costs and reasonable expenses of collection and enforcement, including, without limitation, attorneys' fees and disbursements.  In addition, in the event of a payment default hereunder, the Employee shall pay all reasonable attorneys' fees and disbursements incurred by UBS in obtaining advice as to its rights and remedies in connection with such default.

UBS will at all times have a right to set off any or all of the Obligations, at or after the time at which they become due, whether upon demand, by acceleration or otherwise, against all securities, cash, deposits or other property in the possession of or at any time in any account maintained with UBS or any of its affiliates by or for the benefit of the Employee, whether carried individually or jointly with others, other than items considered to be deferred compensation as defined in I.R.C. Section 409A. This right is in addition to, and not in limitation of, any right UBS may have at law or otherwise.

All rights and remedies of UBS under this Promissory Note are cumulative and are in addition to all other rights and remedies that UBS may have at law or equity or under any other contract or other writing for the collection of any amount due under this Promissory Note.

This Note may be assigned by UBS, and the benefits and obligations hereof shall inure to UBS's successors and assigns.

This Promissory Note may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBS. The non-exercise by UBS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

With the exception of claims for injunctive relief or for the denial of benefits under the disability or medical plans of UBS and/or any related entities, Employee and UBS agree that, unless prohibited by applicable law, any disputes between Employee and UBS, including any related entities, including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment, or any claims for discrimination, retaliation or harassment, or any other claims whether they arise by statute or otherwise, including but not limited to, claims arising under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, The Age Discrimination in Employment Act of 1967, The Worker Adjustment and Retraining Notification Act, The Employee Retirement Income Security Act, The Americans With Disabilities Act, The Equal Pay Act of 1963, The Americans With Disabilities Act of 1990, The Family and Medical Leave Act of 1993, The Sarbanes-Oxley Act, or any other federal, state or local employment or discrimination laws, rules or regulations, including wage and hour laws, will be determined by arbitration as authorized and governed by the arbitration law of the state of New Jersey. Any such arbitration will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA"), except that Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS pursuant to its Employment Arbitration Rules and Procedures and subject to the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBS agree that the decision of the Arbitrator(s) will be final and binding on the parties and that the Arbitrator(s) is authorized to award whatever remedies would be available to the parties in a court of law. Employee and UBS further agree that any disputes between Employee and

UBS, including any related entities, shall be heard, as set forth above, by FINRA or JAMS without consolidation of such claims with any other person or entity. Employee waives any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to Employee's employment with UBS, including any related entities, or termination of employment with UBS, including any related entities. Notwithstanding anything to the contrary herein, Employee and UBS further agree that if, for any reason, the waiver of Employee's right to commence, be a party to or an actual or putative class member of a class or collective proceeding within or outside of an arbitration proceeding is found to be unenforceable by a court of competent jurisdiction, then any such class or collective claim shall be filed, litigated and adjudicated in a court of competent jurisdiction, and not in arbitration.

Information about JAMS, including its Employment Arbitration Rules and Procedures can found at www.jamsadr.com. If Employee chooses to arbitrate before JAMS, then, where permitted by law, Employee only shall be responsible for those arbitration fees and costs that Employee would have been required to bear in a FINRA arbitration.

THIS PROMISSORY NOTE SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

IN WITNESS WHEREOF, Employee has executed this Note as of the date set forth above.

EMPLOYEE:

_____

UBS:

_____

**EXHIBIT D**

## TRANSITION AGREEMENT #B00000030U

This Transition Agreement ("Agreement") is entered into this 22 day of November, 2010, between UBS Financial Services Inc., a Delaware corporation, and its successors and/or assigns ("UBSFS") and NICOLE CATHERINE DOMNARSKI ("Employee").

1.    Transition Payments:  Subject to the terms and conditions set forth in this Agreement, on the dates set forth below, UBSFS agrees to pay Employee transition payments in the amounts set forth immediately below less applicable withholdings for federal, state and local taxes:

$4,009.82 on 11/22/2011

$3,915.00 on 11/22/2012

$3,820.18 on 11/22/2013

$3,725.36 on 11/22/2014

$3,630.54 on 11/22/2015

$3,535.72 on 11/22/2016

$3,440.90 on 11/22/2017

$3,346.08 on 11/22/2018

$3,251.26 on 11/22/2019

2.    Conditions For Payments:   UBSFS shall have no obligation to make any transition payment hereunder in the event that Employee's employment with UBSFS is terminated, either voluntarily or involuntarily, by Employee or UBSFS for any reason whatsoever other than death and disability (as defined herein).  Further, UBSFS shall not be obligated to make any transition payment hereunder unless: (a) Employee has, at all times since the date of this Agreement, remained in the full-time, active employment of UBSFS; (b) Employee has obtained and maintained in full force and effect all licenses and registrations from the Financial Industry Regulatory Authority ("FINRA"), securities exchanges, state securities commissions and other regulatory bodies as UBSFS shall determine is necessary or appropriate in order for Employee to conduct securities or commodities transactions or otherwise perform the functions for which he/she is employed; and (c) Employee is current on all of his or her outstanding obligations to UBSFS and all related entities.   For purposes of any applicable wage and hour laws, rules or regulations, Employee hereby acknowledges that the transition payments are not earned by the Employee until any amounts owed to UBSFS, or any related entity, by the Employee are paid.  Employee further acknowledges that he or she will not be entitled to any part-year or pro-rata transition payment if his or her employment terminates prior to the date the next transition payment is due to be made by UBSFS.

1

3. <u>Death Or Disability</u>: If Employee shall die or incur a disability while a full-time employee of UBSFS, then UBSFS shall make a lump sum payment of the transition payments remaining on the date of the Employee's death or the date Employee incurred such a disability.  Such lump sum payment shall be subject to applicable withholdings and shall be remitted to Employee (or his/her estate) or, at UBSFS's option, applied to any financial obligation Employee (or his/her estate) has to UBSFS, or any related entity, as soon as administratively feasible, but in no event later than March 15 of the calendar year following the year in which such event occurs.  For purposes of this Agreement, "disability" shall mean a "total disability" as such term is used in the UBSFS Long Term Disability ("LTD") Plan), <u>provided, however,</u> that if a total disability as defined in the LTD Plan does not constitute a "disability" within the meaning of Section 409A of the Internal Revenue Code of 1986, as amended, or the regulations promulgated thereunder ("I.R.C. Section 409A"), then disability for purposes of this Agreement shall have the meaning set forth in I.R.C. Section 409A.

4. <u>Arbitration</u>:  With the exception of claims for injunctive relief or for the denial of benefits under the UBSFS's disability or medical plans, Employee and UBSFS agree that, unless prohibited by applicable law, any disputes between Employee and UBSFS including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment, or any claims for discrimination, retaliation or harassment, or any other claims whether they arise by statute or otherwise, including but not limited to, claims arising under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, The Age Discrimination in Employment Act of 1967, The Worker Adjustment and Retraining Notification Act, The Employee Retirement Income Security Act, The Americans With Disabilities Act, The Equal Pay Act of 1963, The Americans With Disabilities Act of 1990, The Family and Medical Leave Act of 1993, The Sarbanes- Oxley Act, or any other federal, state or local employment or discrimination laws, rules or regulations, including wage and hour laws, will be determined by arbitration as authorized and governed by the arbitration law of the state of New Jersey. Any such arbitration will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA"), except that Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS pursuant to its Employment Arbitration Rules and Procedures and subject to the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBSFS agree that the decision of the Arbitrator(s) will be final and binding on the parties and that the Arbitrator(s) is authorized to award whatever remedies would be available to the parties in a court of law.  Employee and UBSFS further agree that any disputes between Employee and UBSFS shall be heard, as set forth above, by FINRA or JAMS without consolidation of such claims with any other person or entity.  Employee waives any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to Employee's employment with UBSFS or termination of employment with UBSFS.

Information about JAMS, including its Employment Arbitration Rules and Procedures can found at www.jamsadr.com.  If Employee chooses to arbitrate before JAMS, then, where permitted by law, Employee only shall be responsible for those arbitration fees and costs that Employee would have been required to bear in a FINRA arbitration.

5.   Non-Solicitation Of Clients:  In the event Employee's employment with UBSFS is terminated for any reason whatsoever, whether voluntarily or involuntarily, Employee agrees, for a period of one year from the date of termination or until such time that all amounts owed by the Employee to UBSFS and all related entities have been fully repaid, whichever is earlier, to not solicit, directly or indirectly, any of the clients who maintain accounts at UBSFS ("Clients of UBSFS") whom Employee serviced during his/her employment at UBSFS or other Clients of UBSFS whose names became known to Employee while in the employ of UBSFS.

"Solicit" as set forth in this paragraph means that the Employee will not initiate, whether directly or indirectly, any contact or communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting a client or that may have the effect of inviting, encouraging or requesting a client:

(a)   to transfer his/her UBSFS account(s) to the Employee or his/her new employer; or
(b)   to open a new account with Employee or his/her new employer; or
(c)   to otherwise discontinue his/her existing business relationship with UBSFS.

6.   Confidentiality Of Client Information:  All information concerning Clients of UBSFS, former clients of UBSFS and prospective clients of UBSFS must be treated as confidential and must not be disclosed to anyone outside UBSFS unless the disclosure is expressly authorized by the client, required by law, rule, regulation or legal process.  Employee further expressly agrees that, in the event Employee's employment is terminated for any reason whatsoever, whether voluntarily or involuntarily, Employee may not take any records or information referring or relating to Clients of UBSFS, former clients of UBSFS and prospective clients of UBSFS, whether originals or copies, in hard copy or computerized form.

7.   Other Agreements:  In the event that Employee enters into other agreements with UBSFS that contain non-solicitation and/or confidentiality obligations, including, but not limited to, Corporate Employee Account Servicing Agreements, Receiving and/or Retiring or Transitioning Financial Advisor Agreements, Financial Advisor Team Agreements, and/or Account Assignment Agreements, the non-solicitation and/or confidentiality provisions of any such agreement shall govern Employee's conduct with respect to the solicitation of clients and use of client information covered by those Agreements.

8.   Remedies:  In the event that any of the provisions contained in the Non-Solicitation of Clients and/or Confidentiality of Client Information paragraphs of this Agreement are breached by Employee, Employee understands that Employee will be liable to UBSFS for any damage and/or injury, including but not limited to reasonable attorney's fees, incurred to enforce the provisions of this Agreement.  Employee also specifically

3

agrees that, in the event of breach of the Non-Solicitation of Clients and/or Confidentiality of Client Information paragraphs of this Agreement, damages alone will be an inadequate remedy and UBSFS will, in addition to damages for breach, be entitled to injunctive or other equitable relief against Employee to enforce the provisions of these paragraphs.

EMPLOYEE FURTHER EXPRESSLY CONSENTS TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION BY ANY COURT OR ARBITRATION PANEL WITH JURISDICTION OVER EMPLOYEE TO PROHIBIT THE BREACH OF ANY PROVISION OF THIS AGREEMENT, OR TO MAINTAIN THE STATUS QUO PENDING THE OUTCOME OF ANY ARBITRATION PROCEEDING THAT MAY BE INITIATED; AND, FURTHER, THAT THE ISSUE OF TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF MAY BE DECIDED BY A COURT AND NOT BY AN ARBITRATION PANEL SHOULD UBSFS IN ITS DISCRETION ELECT TO SEEK SUCH RELIEF.

9.      Assignment:  This Agreement may be assigned by UBSFS and the benefits and obligations hereof shall inure to UBSFS's successors and assigns (and all references herein to UBSFS shall together be deemed to refer to such successors or assigns as the case may be).

10.     Terms And Modifications:  This Agreement contains all of the terms of the agreement between the parties hereto relating to the subject matter hereof and may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBSFS. The non-exercise by UBSFS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

11.     Not An Employment Contract:   Employee expressly acknowledges that his/her employment with UBSFS is "at will" and that this Agreement is not an employment contract or agreement to employ Employee for a specified period of time or a promise of continued employment with UBSFS for any period whatsoever.  Accordingly, Employee acknowledges that his/her employment may be terminated with or without cause and with or without notice at any time at his/her option or that of UBSFS .

12.     Governing Law:  This Agreement shall be governed by and construed and enforced in accordance with the laws of the state of New Jersey without regard to principles of conflicts of laws.

IN WITNESS WHEREOF, Employee has executed this Agreement as of the date set forth above

EMPLOYEE:

_____

4

UBS Financial Services Inc.


By: _____

**EXHIBIT E**

       

**UBS Financial Services Inc.**
1000 Harbor Boulevard
Weehawken, NJ 07086

www.ubs.com

**CERTIFIED MAIL RRR
AND REGULAR MAIL**

August 30, 2011

Ms. Nicole Domnarski
56 Olney Road
Palmer, MA 01069-9876

Re:     **Promissory Notes with UBS Financial Services Inc.**

Dear Ms. Domnarski:

I am writing to you concerning your failure to repay the outstanding loan obligation that became due and owing to UBS Financial Services Inc. ("UBS") immediately upon the termination of your employment with UBS on August 26, 2011.

As you are aware, you executed two Promissory Notes #2027 dated November 19, 2008 and #B00000030U dated November 22, 2010, copies of which are enclosed  Pursuant to the terms and conditions of the Promissory Notes, the outstanding principal balance on the Promissory Notes, totaling $126,442.58, became immediately due and owing upon the termination of your employment from UBS.

UBS hereby demands that you make immediate payment of this outstanding obligation by check made payable to UBS Financial Services, Inc. and delivered to the following address:

> **UBS Financial Services Inc.**
> **Asset Recovery Unit – Credit Risk Control**
> **1000 Harbor Blvd. – 9/1000**
> **Weehawken, NJ  07086**
> **Attn: John Sfera**

If you do not remit full payment by September 7, 2011 UBS may take further legal steps to enforce and protect its rights, including, but not limited to, filing an arbitration claim against you for the full amount of the Promissory Notes, in addition to interest, attorneys fees and all associated costs of collection.

UBS Financial Services Inc. is a subsidiary of UBS AG.

   **UBS Financial Services Inc.**

Ms. Nicole Domnarski
August 30, 2011
Page 2 of 2

Please be advised that this letter constitutes a demand for arbitration and notice of intent to arbitrate this matter pursuant to N.J.S.A. 2A:23B-9. You are obliged to submit all matters relating to your employment or termination to arbitration at the request of UBS Financial Services by virtue of, among other things, the Promissory Notes you executed.

If you wish to discuss this matter, I invite you or your legal representative to call me at (201) 352-2945.

Very truly yours,
**UBS Financial Services Inc.**

John Scanlon
**Asset Recovery Unit**
**Credit Risk Control**

Enclosures

FINRA ARBITRATION Submission Agreement

Claimant(s)

**In the Matter of the Arbitration Between**

Name(s) of Claimant(s)

**UBS FINANCIAL SERVICES INC.**

and

Name(s) of Respondent(s)

**NICOLE C. DOMNARSKI**

1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3. The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

**UBS FINANCIAL SERVICES INC.**

Claimant Name (please print)                                                      **January 9, 2012**

By: _____

Claimant's Signature **Molly J. Tatman, Director & Associate General**      Date
**Counsel**
State capacity if other than individual (*e.g.*, executor, trustee or corporate officer)


Claimant Name (please print)


Claimant's Signature                                                           Date
State capacity if other than individual (*e.g.*, executor, trustee or corporate officer)


If needed, copy this page.

22

## CLAIM INFORMATION SHEET

**I.**    **PARTIES**

CLAIMANT(S): (Provide this information even if you are represented by counsel.)

**UBS Financial Services Inc.**
Name

**1200 Harbor Boulevard, 10th Floor**
Address

| **Weehawken** | **New Jersey** | **07086** |
|---|---|---|
| City | State | Zip Code |

| **201-352-2938** | 201-617-0300 | |
|---|---|---|
| Daytime Telephone | Fax # | E-mail Address |

Residence during the time of the dispute (if different from above):

Name

Address

| City | State | Zip Code |
|---|---|---|

Claimant is a:

☐ Public customer   ☒ Broker/dealer   ☐ Person associated with a broker/dealer
                     BD #   **8174**          CRD #

**Claimant's Counsel/Representative (if applicable):** (Note: NASD requires that persons representing Florida investors in arbitration proceedings conducted in or outside of the State of Florida affirm either that they are licensed to practice law and provide a bar identification number, or that they are not receiving compensation in connection with representing the party in the arbitration proceeding.)

**James L. Komie**
**David J. Sullivan**
**Schuyler, Roche & Crisham, P.C.**
Name                                    Bar ID # (if applicable)

**One Prudential Plaza, 130 E. Randolph Street, Suite 3800**
Address

| **Chicago** | **IL** | **60601** |
|---|---|---|
| City | State | Zip Code |

| | | jkomie@SRCattorneys.com |
|---|---|---|
| **312.565.2400** | **312.565.8300** | dsullivan@SRCattorneys.com |
| Business Telephone | Fax # | E-mail Address |

**If needed, copy this page to list additional claimants.**

CLAIM INFORMATION SHEET

RESPONDENT(S)

Respondent #1:

**Nicole C. Domnarski**
Name

**56 Olney Road**
Address

**Palmer**                                        **MA**                              **01069-9876**
City                                               State                            Zip Code

Business Telephone                                 Fax                              E-mail Address

Respondent #1 is a:
☐ Public customer        ☐ Broker/dealer        ☒ Person associated with a broker/dealer
                         BD # _____         CRD #2950645

Respondent #2:

Name

Address

City                                               State                            Zip Code

Business Telephone                                 Fax                              E-mail Address

Respondent #2 is a:
☐ Public customer        ☐ Broker/dealer        ☐ Person associated with a broker/dealer

                         BD # _____         CRD # _____

**If needed, copy this page to list additional respondents.**

## CLAIM INFORMATION SHEET

### RESPONDENT(S)

Respondent #3:

Name

Address

City                                    State                         Zip Code

Business Telephone                       Fax                          E-mail Address

Respondent #3 is a:
☐ Public customer      ☐ Broker/dealer      ☐ Person associated with a broker/dealer

BD # _____   CRD # _____

Respondent #4:

Name

Address

City                                    State                         Zip Code

Business Telephone                       Fax                          E-mail Address

Respondent #4 is a:
☐ Public customer      ☐ Broker/dealer      Person associated with a broker/dealer

BD # _____   CRD _____

CLAIM INFORMATION SHEET

<u>II.</u>   <u>CLAIMS</u>

**NOT APPLICABLE**

**Accounts:** If the dispute or claim involves activity with respect to an account or accounts, please list each account and indicate the type of account it is (*e.g.*, joint account, custodial account, etc.)

<u>1.</u>

| Name (exactly as it appears on the account) | Type of Account |
| --- | --- |
| Name of Firm and Branch Office | Date Account Opened |
| Name of Registered Representative | Account Number |

<u>2.</u>

| Name (exactly as it appears on the account) | Type of Account |
| --- | --- |
| Name of Firm and Branch Office | Date Account Opened |
| Name of Registered Representative | Account Number |

<u>3.</u>

| Name (exactly as it appears on the account) | Type of Account |
| --- | --- |
| Name of Firm and Branch Office | Date Account Opened |
| Name of Registered Representative | Account Number |

**If needed, copy this page to list additional accounts.**

16

## CLAIM INFORMATION SHEET

Type of Dispute: (Check where applicable)

### a. Account Related

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Breach of Contract | ☐ | Exchanges | ☐ | Transfer |
| ☐ | Collection | ☐ | Failure to Supervise | ☐ | Other |
| ☐ | Dividends | ☐ | Margin Calls | ☐ | |
| ☐ | Errors/Charges | ☐ | Negligence | | |

### b. Executions

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Execution Price | ☐ | Incorrect Quantity | ☐ | Other |
| ☐ | Failure to Execute | ☐ | Limit Versus Marker Order | | |

### c. Account Activity

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Breach of Fiduciary Duty | ☐ | Misrepresentations | ☐ | Unauthorized Trading |
| ☐ | Churning | ☐ | Omission of Facts | ☐ | Other |
| ☐ | Manipulations Unauthorized Trading | ☐ | Suitability | | |

### d. Employment

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Breach of Contract | ☐ | Discrimination National Origin | | Partnerships |
| ☐ | Commissions | ☐ | Discrimination Race | ☒ | Promissory Notes |
| ☐ | Compensation | ☐ | Discrimination Religion | | Sexual Harassment |
| ☐ | Discrimination Age | ☐ | Discrimination Sexual Preference | | Training Contracts |
| ☐ | Discrimination Disability | ☐ | Libel or Slander | | Wrongful Termination |
| ☐ | Discrimination Gender Other | ☐ | Libel or Slander on Form U-5 | | Other |

### e. Trading Dispute

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Buy-in | ☐ | Markups | ☐ | Transfers |
| ☐ | D.K.s | ☐ | Sell Outs | ☐ | Others |
| ☐ | Manipulation | ☐ | Stock Loan | | |

### f. Other

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Clearing Dispute | ☐ | Indemnification | ☐ | Underwriting |
| ☐ | Defamation | ☐ | Raiding Disputes | ☐ | Other |

Type of Security(ies), Financial Instrument(s), and/or Investment(s) involved in the Dispute:

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Annuities | ☐ | "Fannie Maes" | ☐ | Options |
| ☐ | Variable Annuities | ☐ | "Freddie Macs" | ☐ | Preferred Stock |
| ☐ | Auction-Rate Securities | ☐ | Futures | ☐ | Private Equities |
| ☐ | Certificates of Deposit | ☐ | "Ginnie Maes" | ☐ | Real Estate Investment Trust |
| ☐ | Collateralized Debt Obligations (CDOs) | ☐ | Government Securities | ☐ | Repurchase Agreements |
| ☐ | Collateralized Mortgage Obligations (CMOs) | ☐ | Hedge Funds | ☐ | Reverse Repurchase Agreements |
| ☐ | Commodities (Other than Futures) | ☐ | Limited Partnerships | ☐ | Stock Index Futures |
| ☐ | Common Stock | ☐ | Municipal Bonds | ☐ | Structured Products |
| ☐ | Corporate Bonds | ☐ | Municipal Bond Funds | ☐ | Warrants/Rights |
| ☐ | Exchange-Traded Funds | ☐ | Mutual Funds | ☐ | Other |

CLAIM INFORMATION SHEET

III.    RELIEF REQUESTED

1.    Damages

Actual Damages Requested                                    $126,442.58    1.
(monetary sum required to compensate a party for his or her loss)

Punitive Damages Requested                                  $              2.
(monetary amount intended to punish the wrongdoer)

                        * AMOUNT IN DISPUTE:                 $126,442.58    3.

                        *Use this amount to calculate the correct
                        filing fee and hearing session deposit
                        in Part IV. This amount *must* match
                        the amount stated in your claim.

Interest                                                     To be determined
(include calculations, if possible)                         per promissory note

2.    Other Type of Relief Requested

Specific Performance (Specify the type of specific performance sought)
(specific performance requires parties to take an action, such as turning over ownership of stocks)


Injunctive Relief (Specify the type of injunctive relief sought)
(injunctions require parties to refrain from certain actions)


3.    Costs
(Provide specific amounts, if known. If not known, please mark an "X" to indicate the costs you are requesting)

                                              X (Unknown)
Forum Fees
                                              X (Unknown)
Attorney's Fees

Witness and Production Fees
                                              X (Unknown)
Other Case-Related Costs

**ROWSELL AFFIDAVIT**

**EXHIBIT 2**



**FINra®**
Financial Industry Regulatory Authority

March 7, 2012

COPY -- SEE RECIPIENT LIST

Subject:   FINRA Dispute Resolution Arbitration Number 12-00096
           UBS Financial Services Inc. vs. Nicole C. Domnarski

Dear Ms. Domnarski:

This letter is to inform you that FINRA has not received your Statement of Answer in this matter.

If a party does not answer within the time period specified in the Code of Arbitration Procedure, the panel may bar that party from presenting any defenses or facts at the hearing. In addition, the party may also be subject to default proceedings.

Should you have any questions, please contact me at the phone number or email address provided below.

Very truly yours,

Nicole C. Haynes
Case Assistant Manager
Phone:   212-858-4200
Fax:       301-527-4873
NEProcessingCenter@finra.org

NCH:net:LC28A
idr: 09/09/2011

CC:
        David J. Sullivan, Esq., UBS Financial Services Inc.
        Schuyler, Roche & Crisham, P.C., One Prudential Plaza, 130 East Randolph Street,
        Suite 3800, Chicago, IL 60601

RECIPIENTS:
        Nicole Catherine Domnarski
        56 Olney Street, Palmer, MA 01069

Investor protection. Market integrity.        Dispute Resolution        One Liberty Plaza        t  212 858 4200
                                             Northeast Regional Office   165 Broadway              f  301 527 4873
                                                                         27th Floor                www.finra.org
                                                                         New York, NY
                                                                         10006-1404

# ROWSELL AFFIDAVIT

# EXHIBIT 3



FINRA
Financial Industry Regulatory Authority

April 11, 2012

David J. Sullivan, Esq.
Schuyler, Roche & Crisham, P.C.
One Prudential Plaza
130 East Randolph Street, Suite 3800
Chicago, IL 60601

Subject:   FINRA Dispute Resolution Arbitration Number 12-00096
           UBS Financial Services Inc. vs. Nicole C. Domnarski

Dear Mr. Sullivan:

Please direct all correspondence and inquiries to Roy Rowsell at the below address or at 212-858-4200. Please reference your assigned case number when contacting FINRA staff.

FINRA Dispute Resolution appointed an Arbitrator based upon the parties' consolidated lists. The enclosed Case Information Sheet lists the Arbitrator. The Arbitrator's classification as public or non-public is accurate at the time of appointment.

This matter will be submitted to the Arbitrator and will be decided on the documentary evidence submitted by the parties. Attached is a listing of the documents which will be sent to the arbitrator for his/her consideration.

Upon submission of the case to the Arbitrator, the following oath will be administered:

I am not an employer of, employed by or related by blood or marriage to any of the parties or witnesses whose names have been disclosed to me, and I have no interest directly or indirectly in this proceeding, and I know of no existing or past financial, business, professional, family or social relationship which would impair me from performing my duties, and I shall consider and decide the controversy faithfully and fairly and render a just award.

**You are reminded again that direct communication with the Arbitrator on this matter is prohibited. All communications must be made through this office.** If the Arbitrator has no further requests of or directions to the parties, we will next contact you by mail with the Arbitrator's decision.

As you know, the Arbitrator's decision is final, subject only to a limited right of review. The decision is not required to contain findings of fact or reasons for the determination reached. It will, however, contain the information required under the Code of Arbitration Procedure.[1]

---

[1]Customer Code Rule 12904

As a service organization, the primary goals of FINRA Dispute Resolution are the integrity of its process and the satisfaction of its clients.  To ensure that we are meeting your needs and satisfying our commitment to you, **we need to hear from you.**  If you have not already done so, please take the time to complete an evaluation of our services, the process, and the Arbitrator(s) assigned to your case.  For your convenience, we have now made it possible for you to evaluate our services using the Internet.  Please direct your Web browser to http://www.finra.org/arbevaluation.  If you do not have Internet access, or have difficulty completing the evaluation online, you may complete the paper version of the evaluation that was previously provided to you and mail it to the address indicated.  If you need another paper copy of the evaluation form, please contact the undersigned.  Whenever possible, however, please use the new online version, as it will help us to review your feedback in a more expeditious and analytical manner.  Your feedback is a valuable and necessary component in our efforts to serve you better.

Please contact me if you have any questions.

Very truly yours,

Roy Rowsell
Case Administrator
Phone:   212-858-4200
Fax:      301-527-4904
necaseadministration@finra.org

RR:ds3:LC30C
idr: 05/28/2010

CC:
        Sandor I. Rabkin

RECIPIENTS:
        Nicole Catherine Domnarski
        56 Olney Street, Palmer, MA 01069

        David J. Sullivan, Esq., UBS Financial Services Inc.
        Schuyler, Roche & Crisham, P.C., One Prudential Plaza, 130 East Randolph Street,
        Suite 3800, Chicago, IL 60601

Industry Code Rule 13904
Old Code Rule 10330(e)


Financial Industry Regulatory Authority

## Case Information Sheet

1.   **CASE INFORMATION:**

   A. CASE-NUMBER:   12-00096

   B. CASE-NAME:   UBS Financial Services Inc. vs. Nicole C. Domnarski

   C. FINRA Dispute Resolution
   REPRESENTATIVE:   Roy Rowsell
   Case Administrator
   FINRA Dispute Resolution
   One Liberty Plaza
   165 Broadway, 27th Floor
   New York, NY 10006
   212-858-4200

2.   **PARTY REPRESENTATIVE INFORMATION:**

   REPRESENTATIVE:
   Nicole Catherine Domnarski
   Phone: Unknown, Fax: Unknown
   Email: Unknown
   PARTY(IES):
   Nicole Catherine Domnarski, Respondent

   REPRESENTATIVE:
   David J. Sullivan, Esq., Schuyler, Roche & Crisham, P.C.
   Phone: 312-565-8320, Fax: 312-565-8300
   Email: dsullivan@srcattorneys.com
   PARTY(IES):
   UBS Financial Services Inc., Claimant

3.   **ARBITRATION PANEL:**

   Sandor I. Rabkin                    Public Arbitrator          Chairperson

   Demakis Law Offices, P.C.

Investor protection. Market integrity.          Dispute Resolution          One Liberty Plaza          212-858-4200
                                              Northeast Regional Office     165 Broadway                201-232-6275
                                                                            27th Floor                  www.finra.org
                                                                            New York, NY
                                                                            10006-1404

*Arbitrator classification is reported in accordance with the Codes of Arbitration Procedure for Customer and Industry Disputes, Rules 12100(p) and (u) and 13100(p) and (u), respectively. For more information, please see Regulatory Notice 08-22.*

LC20B
idr: 10/05/2009

RECIPIENTS:

Nicole Catherine Domnarski
56 Olney Street, Palmer, MA 01069

David J. Sullivan, Esq., UBS Financial Services Inc.
Schuyler, Roche & Crisham, P.C., One Prudential Plaza, 130 East Randolph Street, Suite 3800, Chicago, IL 60601

©2010 FINRA. All rights reserved.          FINRA Dispute Resolution                    Arbitrator ID:    A15101

# Arbitrator Disclosure Report
Report reflects information provided by the arbitrator through  04/09/2012

## ARBITRATOR

**Name:** Mr. Sandor I. Rabkin          **Skills in Controversy:**

**Arbitrator ID:** A15101          There are no Skills in Controversy information.

**CRD #:**

**City/State/Country:** Lynn / MA / United States

**Classification:** Public          **Skills in Securities:**

**FINRA Mediator:** No          There are no Skills in Security information.

**Chair Status:** Qualified

**Statutory Discrimination Qualified -** This arbitrator meets the conditions set forth in FINRA's Code of Arbitration Procedure to serve as the chairperson or sole arbitrator on a case involving a statutory discrimination claim.

**Injunctive Qualified -** This arbitrator is an attorney and has reported experience litigating cases involving injunctive relief.

## EMPLOYMENT

| Start Date | End Date | Firm | Position |
|---|---|---|---|
| 07/1996 | Present | Demakis Law Offices | Civil Attorney |
| 07/1995 | 07/1996 | Niarchos & Toto | Insurance Defense Attorney |
| 05/1988 | 07/1995 | Mahoney, Kiley, Szulkin et al | Insurance Defense Attorney |
| 01/1987 | 05/1988 | Long, Anderson & McTaggont | Insurance Defense Attorney |
| 04/1980 | 12/1986 | Latham & Latham P.C | Civil Litigation Attorney |
| 01/1976 | 03/1980 | Essex County District Attorneys Office | Assist Dis. Attorney |

## EDUCATION

| Start Date | End Date | School | Degree |
|---|---|---|---|
| 01/1972 | 01/1975 | Suffolk Law School | JD |
| 01/1967 | 01/1971 | University of Massachuettes | BA |

## TRAINING

| Completed | Description | Details | Firm/School | Hours | Location |
|---|---|---|---|---|---|
| 08/2009 | Expungement - 2008 Refresher | | FINRA | 1 | |
| 03/2007 | Revised Code of Arbitration | | NASD | 2 | online |
| 10/2004 | Expungement online mini-course | | NASD | 1.5 | online |
| 08/1998 | New Chairperson Training [NASD] | | NASD | 11 | Boston, MA |
| 11/1996 | Intro Securities Arbitrator Training | | NASD | 7 | New York, NY |
| 01/1996 | Mediation Training | | CDSC, Inc. | 30 | |

Publicly Available Awards Section, Current as of  04/11/2012

©2010 FINRA. All rights reserved. FINRA Dispute Resolution                Arbitrator ID:   A15101

## DISCLOSURE/CONFLICT INFORMATION

| Type | Firm Name | Details |
|---|---|---|
| Has an account with | Charles Schwab & Co., Inc. | |
| Has an account with | E*Trade | |
| Related Conflict With | Fidelity Brokerage Services Llc | Conflict due to a merger/acquisition |
| Has an account with | Fidelity Investments Institutional Services | |
| Related Conflict With | Optionsxpress, Inc. | Conflict due to a merger/acquisition |
| Had an account with | Ameritrade | |
| Had an account with | Brownco, LLC | |
| Had an account with | Citigroup Global Markets, Inc. | |
| Had an account with | Morgan Stanley DW, Inc. | |
| Had an account with | Stock Cross, Inc. | |
| Arbitrator for | | American Arbitration Association |
| Is a Member of Bar Association | | Mass Bar Association |

## PUBLICLY AVAILABLE AWARDS
Publicly Available Awards Section, Current as of  04/11/2012

| Case ID | Case Name | Close Date |
|---|---|---|
| 10-03416 | Robert S. Dingolo and Dianne Dingolo vs. Wells Fargo Advisors, LLC and Robert Alexander Malocco | 02/14/2012 |
| 11-03141 | Ameriprise Financial Services, Inc. vs. Jeffrey Lavoie | 12/12/2011 |
| 09-06212 | Ameriprise Financial Services, Inc. vs. Jason Peroni | 06/17/2011 |
| 10-04310 | Wells Fargo Advisors, LLC f/k/a Wachovia Securities, LLC vs. Joseph Morrow | 01/28/2011 |
| 09-04798 | TD Ameritrade, Inc. vs. David D. Lu | 05/07/2010 |
| 07-01736 | Wachovia Securities, LLC v. Morgan Stanley & Co., Inc. n/k/a Morgan Stanley Smith Barney LLC, Mark Brown, Todd Walker, et al | 01/05/2010 |
| 08-00733 | Wachovia Securities, LLC vs. Timothy McNamara | 02/05/2009 |
| 05-01488 | Oppenheimer & Co., Inc. v. Anthony V. Demarco | 10/26/2007 |
| 05-00927 | Grace Fraser Trustee of the Thomas Fraser Trust et al vs. A.G. Edwards & Sons, Inc. | 02/13/2007 |
| 05-05632 | Patricia L. Coughlin Ind. and on behalf of the Patrica L. Coughlin Rollover IRA v. Legg Mason Wood Walker, Inc. | 11/01/2006 |
| 04-08079 | William N. Leporini, Marie Leporini, William J. Leporini, et al. vs. First Albany Corporation, et al. | 04/13/2006 |
| 03-08740 | Gaetano J. Aglione, Beverly Aglione, Gaetano J. Aglione IRA, et al v. American Express Financial Advisors, Inc. | 11/30/2004 |
| 03-08075 | Murjen Financial, Inc. vs. James K. Wolf | 09/14/2004 |
| 02-00429 | Rita L. Jewett vs. Lincoln Life and Annuity Distributors, Inc. | 06/13/2003 |
| 02-03759 | UBS/PaineWebber Inc vs. Christopher Ralph and Kathleen Ralph | 11/14/2002 |
| 01-01202 | Stan Schuldiner v. America First Associates Corp. and Joseph Ricupero | 03/27/2002 |
| 97-03750 | Andrea M. Tooker vs. Americorp Securities, Inc., Ronald W. Davis, Timothy J. Thomas, Scott A. Lanham, et al. | 07/13/1998 |

## CASES CURRENTLY ASSIGNED INVOLVING PUBLIC CUSTOMERS

Publicly Available Awards Section, Current as of  04/11/2012

©2010 FINRA. All rights reserved.   FINRA Dispute Resolution   Arbitrator ID:   A15101

| Case ID | Securities Firms and Associated Persons | Date Assigned | Role |
|---------|-----------------------------------------|---------------|------|
| 11-03583 | UBS Financial Services Inc. | 03/01/2012 | Chair |
| 11-02355 | UBS Financial Services Inc. | 09/20/2011 | Chair |
| 10-04399 | Private Asset Group, Inc.; Joseph Anthony Deluca, Jr.; Matthew Sweeney | 01/31/2011 | Chair |

## CASES CURRENTLY ASSIGNED NOT INVOLVING PUBLIC CUSTOMERS

| Case ID | Securities Firms and Associated Persons | Date Assigned | Role |
|---------|-----------------------------------------|---------------|------|
| 12-00096 | UBS Financial Services Inc.; Nicole Catherine Domnarski | 04/09/2012 | Chair |
| 11-02084 | Oppenheimer & Co., Inc.; Richard Wolff Dumont; Charles Leo Abry | 10/25/2011 | Chair |
| 11-01558 | Morgan Stanley Smith Barney; Paul Stanford | 09/14/2011 | Chair |
| 11-00200 | Morgan Stanley Smith Barney; Patrick A. Sier | 04/19/2011 | Chair |
| 11-00145 | Merrill Lynch Pierce Fenner & Smith Inc.; Nicole Alise Cannava | 05/19/2011 | Chair |
| 10-00718 | Merrill Lynch Pierce Fenner & Smith Inc.; Christopher J. Botello; Paul A. Squarcia | 05/19/2010 | Chair |

## ARBITRATOR BACKGROUND INFORMATION

I am an attorney who has been in practice for 35 years and for the past 30 years, I have specialized in all areas of civil litigation. I have served as an arbitrator for the past fifteen years for the American Arbitration Association.

I presently handle some civil litigation for a four person law firm and approximately 80% of my practice consists of service as an arbitrator or mediator.

CHAIRPERSON QUALIFICATIONS FOR STATUTORY EMPLOYMENT DISCRIMINATION CASES

I have had 35 years experience in the practice of law. I have served as an arbitrator with the American Arbitration Association for approximately fifteen years. For the past thirty years I specialized in civil litigation and in the past nine years, I have been involved in five cases in the Massachusetts Superior Court involving employment law.

Publicly Available Awards Section, Current as of  04/11/2012

**CONFIDENTIAL**

---

## CERTIFICATE OF ARBITRATOR'S EXHIBIT NO. 1

*The documents on this list comprise Arbitrator's Exhibit No. 1. If a document is not identified, it was not received. If this list is not accurate, please contact FINRA Dispute Resolution immediately. Arbitrators must read all documents in Arbitrator's Exhibit No. 1 prior to a hearing.*

*The list of documents may include certain FINRA Dispute Resolution notices to the parties.*

---

Case Number 12-00096              Staff Assigned: Roy Rowsell

Case Name: UBS Financial Services Inc., vs. Nicole C. Domnarski

| Name of Claimant(s): UBS Financial Services Inc. | |
|---|---|
| Submission Agreement | X |
| Statement of Claim | X |
| Amended Statement of Claim | |
| Motion to | |
| Responses to Motion | |
| Reply to Motion | |
| Answer to Counterclaim | |
| Other | |

Date Initially Sent to Parties _____

**CONFIDENTIAL**

| | |
|---|---|
| Name of Respondent 1. Nicole C. Domnarski | |
| Submission Agreement | |
| Statement of Answer | |
| Extension to File Statement of Answer | [  ]  Due Date<br>[  ]  See enclosed letter dated |
| Request for Clarification | |
| Counterclaim | |
| Cross Claim | |
| Third-Party Claim vs. | |
| Amended Statement of Answer | |
| Response to Amended Statement of Claim | |
| Response to Cross Claim | |
| Response to Third-Party Claim | |
| Motion to | |
| Response to Motion | |
| Reply to Motion | |
| Other | |

Date Initially Sent to Parties _____

**CONFIDENTIAL**

| Name of Respondent 2. | |
|---|---|
| Submission Agreement | Yes [  ]                        No [  ] |
| Statement of Answer | |
| Extension to File Statement of Answer | [  ] Due Date<br>[  ] See enclosed letter dated |
| Request for Clarification | |
| Counterclaim | |
| Cross Claim | |
| Third-Party Claim vs. | |
| Amended Statement of Answer | |
| Response to Amended Statement of Claim | |
| Response to Cross Claim | |
| Response to Third-Party Claim | |
| Motion to | |
| Response to Motion | |
| Reply to Motion | |
| Other | |

Date Initially Sent to Parties _____

**CONFIDENTIAL**

| Name of Respondent 3. | |
|---|---|
| Submission Agreement | Yes [  ]                     No [  ] |
| Statement of Answer | |
| Extension to File Statement of Answer | [  ] Due Date<br>[  ] See enclosed letter dated |
| Request for Clarification | |
| Counterclaim | |
| Cross Claim | |
| Third-Party Claim vs. | |
| Amended Statement of Answer | |
| Response to Amended Statement of Claim | |
| Response to Cross Claim | |
| Response to Third-Party Claim | |
| Motion to | |
| Response to Motion | |
| Reply to Motion | |
| Other | |

Date Initially Sent to Parties _____

**CONFIDENTIAL**

| Name of Respondent 4 | |
|---|---|
| Submission Agreement | Yes [ ]                         No [ ] |
| Statement of Answer | |
| Extension to File Statement of Answer | [ ] Due Date<br>[ ] See enclosed letter dated |
| Request for Clarification | |
| Counterclaim | |
| Cross Claim | |
| Third-Party Claim vs. | |
| Amended Statement of Answer | |
| Response to Amended Statement of Claim | |
| Response to Cross Claim | |
| Response to Third-Party Claim | |
| Motion to | |
| Response to Motion | |
| Reply to Motion | |
| Other | |

Date Initially Sent to Parties _____

## CONFIDENTIAL

FINRA Dispute Resolution Notices to the Parties

[Deficiency Notice, etc.]

Note: An answering party who fails to file a Uniform Submission Agreement pursuant to the Code may be subject to sanctions pursuant to Rule 12212 of the Customer Code or Rule 13212 of the Industry Code.

[Other]

Date Initially Sent to Parties _____

**ROWSELL AFFIDAVIT**

**EXHIBIT 4**



Financial Industry Regulatory Authority

April 27, 2012

COPY -- SEE RECIPIENT LIST

Subject:   FINRA Dispute Resolution Arbitration Number 12-00096
           UBS Financial Services Inc. vs. Nicole C. Domnarski

Dear Ms. Domnarski:

Enclosed please find the decision reached by the arbitrator in the above-referenced matter.

FINRA rules provide that all monetary awards shall be paid within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction.  An award shall accrue interest from the date of the award:

- If not paid within 30 days of receipt;
- If the award is the subject of a motion to vacate which is denied; or
- As specified by the panel in the award.

Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s).

Firms are required to notify FINRA in writing within 30 days of receipt of an award that they or their associated persons have paid or otherwise complied with the award, or to identify a valid basis for non-payment. **The 30-day period ends on:** May 29, 2012. Associated persons who have changed employment since the arbitration claim was filed are required to notify FINRA directly regarding the payment status of any awards against them.  Please review Notice to Members 00-55 for more information on the notification requirement and the sanctions for noncompliance.

Written notification concerning award compliance or lack thereof should be directed to:

David Carey
FINRA Dispute Resolution
One Liberty Plaza, 165 Broadway, 52nd Floor
New York, NY 10006
212-858-4333 (tel) | 301-527-4706 (fax) | david.carey@finra.org (email)

Should you have any questions, please contact me at the phone number or email address provided below.  Parties should not directly contact arbitrators under any circumstances.

Investor protection. Market integrity.        Dispute Resolution        One Liberty Plaza        t  212 858 4200
                                               Northeast Regional Office  165 Broadway        f  301 527 4873
                                                                          27th Floor          www.finra.org
                                                                          New York, NY
                                                                          10006-1404

Very truly yours,

Roy Rowsell
Case Administrator
Phone:   212-858-4200
Fax:      301-527-4904
necaseadministration@finra.org

RR:em: LC09X
idr: 12/06/2011

CC:

David J. Sullivan, Esq., UBS Financial Services Inc.
Schuyler, Roche & Crisham, P.C., One Prudential Plaza, 130 East Randolph Street,
Suite 3800, Chicago, IL 60601

RECIPIENTS:

Nicole Catherine Domnarski
56 Olney Street, Palmer, MA 01069

**AWARD**
FINRA DISPUTE RESOLUTION

CASE:  12-00096

Claimant UBS Financial Services Inc. vs. Respondent  Nicole Catherine Domnarski

REPRESENTATION OF PARTIES:
For Claimant: David J. Sullivan, Esq., Schuyler, Roche & Crishan, PC, Chicago, IL.

Respondent did not file an Answer or sign the Submission Agreement.

NATURE OF DISPUTE:  Member vs. Associated Person

DATE FILED: January 9, 2012.

CASE SUMMARY:  Claimant asserted the following causes of action:  breach of
promissory note, breach of contract, and unjust enrichment.

RELIEF REQUESTED:

In the Statement of Claim, Claimant requested:

| | |
|---|---|
| Compensatory Damages: | $ 126,442.58 |
| Interest: | Unspecified |
| Attorneys' Fees: | Unspecified |
| Costs: | Unspecified |
| Other: | Unspecified |

AWARD: The undersigned arbitrator (the "Arbitrator") has decided and determined in full
and final resolution of the issues submitted for determination as follows:  1) Respondent
is liable for and shall pay to the Claimant compensatory damages in the amount of
$126,442.58.  2) Claimant's claims for interest are denied in their entirety.  3) All
requests for attorneys' fees are denied.  4) All other relief requests are denied.

FEES: Claimant has paid to FINRA Dispute Resolution the $1,700.00 Member
Surcharge and the $750.00 Prehearing Process Fee previously invoiced.

FINRA Dispute Resolution shall retain the $1,000.00 non-refundable portion of the filing
fee that the Claimant deposited previously.

The Arbitrator has assessed the paper decision fee in the sum of $300.00 to
Respondent.

FINRA Dispute Resolution
Arbitration No.  12-00096
<u>Award Page 2 of 3</u>

OTHER ISSUES: Respondent Nicole Catherine Domnarski did not file a Statement of Answer.  Accordingly, this matter proceeded pursuant to Rule 13806 of the Code of Arbitration Procedure.  The Arbitrator determined that Respondent Nicole Catherine Domnarski was served with the Statement of Claim, an Overdue Notice and Notification of Arbitrator by regular mail and is therefore bound by the Arbitrator's ruling and determination.

The Arbitrator acknowledges that he has read the pleadings and other materials filed by the parties.

FINRA Dispute Resolution
Arbitration No. 12-00096
<u>Award Page 3 of 3</u>

## ARBITRATOR

Sandor I. Rabkin                -                Sole Public Arbitrator

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein
and who executed this instrument which is my award.

<u>**Arbitrator's Signature**</u>


_____          _____
Sandor I. Rabkin                                    Signature Date
Sole Public Arbitrator



April 27, 2012
_____
Date of Service (For FINRA-DR office use only)

# ROWSELL AFFIDAVIT

# EXHIBIT 5



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

August 20,2012

Dear Customer:

The following is the proof-of-delivery for tracking number **793504461580**.

---

### Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery date: | Apr 28, 2012 10:57 |
| Signed for by: | Signature not required | | |
| Service type: | First Overnight | | |

NO SIGNATURE REQUIRED
Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment because a signature was not required.

---

### Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 793504461580 | Ship date: | Apr 27, 2012 |

Recipient:
PALMER, MA US

Shipper:
NEW YORK, NY US

Reference                                    30320/NYH/FINRACASE#12-96

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339